UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

| | |
|---|---|
| JOHN PAUL MIHAL and<br>AGNES LOUISE MIHAL,<br><br>          Debtors.<br>_____/ | Case No.: 13-54435<br>Chapter: 13<br>Hon. Walter Shapero |

## OPINION SUPPLEMENTING BENCH OPINION AND OVERRULING CHAPTER 13 TRUSTEE'S OBJECTION TO PLAN CONFIRMATION

This Court issued a summary bench opinion on March 12, 2015 overruling the Chapter 13 Trustee's objection to the Debtors' proposed Chapter 13 plan. As stated then, this written Opinion is intended to supplement that bench opinion.

The facts in this case are not in dispute. Debtors, John and Agnes Mihal, are both retirees and receive Social Security income in the amounts of $2,173.90 and $833.00, respectively, such totaling $3,006.90. Debtors' other income is Mr. Mihal's monthly pension of $1,547.63 and monthly VA benefits of $2,973.00, for a total of $4,520.63, exclusive of the Social Security income. Debtors' expenses as shown on Schedule J are $4,020.63. Debtors' Chapter 13 plan proposes payments to creditors of the difference, $500 per month, for 60 months. The Chapter 13 Trustee estimates that, based on the then filed unsecured claims, such would result in an approximately 25% dividend on unsecured claims.

The Trustee objected to confirmation on the sole and limited basis that the Debtors' plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3) because they completely excluded their Social Security income from their plan. The Debtors argue that (1) § 1325(b)(1)(B) requires them to commit all of their "projected disposable income"; and (2) "disposable income" is defined in § 1325(b)(2) to mean "current monthly income", which is defined in § 101(10A)(b) to "include[] any amount paid by any entity other than the debtor… *but*

1

*excludes benefits received under the Social Security Act*[.]" Thus, Debtors' position is that they are under no obligation to commit any of their Social Security income to their plan under the plain language of the Bankruptcy Code, and failing to do so cannot, in and of itself, constitute a lack of good faith and impede confirmation of their proposed plan.

Initially, the Trustee argues that §101(10A)'s definition of "currently monthly income" *does* include Social Security income. The Trustee's reasoning is that (1) §101(10A) is broken into two subsections: subsection (A) relating to average monthly income from all sources derived during the past 6 months, and subsection (B) relating to "any amount paid by any entity other than the debtor"; and (2) the pertinent language that states "but excludes benefits received under the Social Security Act" only appears in subsection (B); and (3) nothing in subsection (A) itself excludes Social Security income from the definition of "currently monthly income." The Trustee attempts to bolster this argument with various maxims of statutory interpretation. For a number of reasons, the Court is not persuaded by these arguments. First, they ignore that subsections (A) and (B) are joined by the conjunctive "and." Second, the Trustee's interpretation would essentially erase subsection (B)'s clear exclusion of Social Security income from the definition of "current monthly income" by opening a back door through subsection (A), by which the Trustee contends Social Security income should be included. Third, the Sixth Circuit has explicitly stated that, by virtue of the § 101 exclusion, "disposable income" excludes benefits received under the Social Security Act. *Baud v. Carroll*, 634 F.3d 327, 345 (6th Cir. 2011) ("We conclude that benefits received under the Social Security Act—such as the benefits the Appellees receive—should not be included in the calculation of projected disposable income.").

Having determined that Social Security income is thus excluded from the definitions of "current monthly income" and "disposable income," the remaining issue is whether the Debtors'

exclusion of that Social Security income from their Chapter 13 plan, by itself, can constitute a lack of good faith, and thus a basis to deny confirmation. The Trustee is not here arguing that Debtors failed to meet any other substantive requirements of the Bankruptcy Code or that there are any other grounds for denying confirmation or affording a basis for a finding of lack of good faith. Both parties agree this is purely a legal issue and if the Court decides in favor of the Trustee, confirmation should be denied.

There is in fact a split of authority on this legal issue. The Sixth Circuit in *Baud*, 634 F.3d at 346 n.13, noted the divergent views without opining on the issue. The Debtors' position is part of what appears to be the majority view, including every Court of Appeals that has opined on this issue. Notable among those cases are *In re Welsh*, 711 F.3d 1120 (9th Cir. 2013); *Mort Ranta v. Gorman*, 721 F.3d 241, 253 n.15 (4th Cir. 2013); *Beaulieu v. Ragos*, 700 F.3d 220 (5th Cir. 2012); *Anderson v. Cranmer*, 697 F.3d 1314 (10th Cir. 2012); *Fink v. Thompson* 439 B.R. 140 (8th Cir. BAP 2010). Other such cases include *In re Vandenbosch*, 459 B.R. 140 (M.D. Fla. 2011); *In re Worthington*, 507 B.R. 276 (Bankr. S.D. Ind. 2014); *In re Melander*, 506 B.R. 855 (Bankr. D. Minn. 2014); *In re Barfknecht*, 378 B.R. 154 (Bankr. W.D. Tex. 2007). Further supporting the Debtors' position are the leading bankruptcy treatises, Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th ed., § 496.2, at ¶ 15 and 8 *Collier on Bankruptcy* ¶ 1325.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

These authorities generally start with the principle of statutory construction that a specific statute is favored over a conflicting general statute. *See Corley v. United States*, 556 U.S. 303, 326 (2009). The good faith requirement in § 1325 has been a part of the Bankruptcy Code since its enactment in 1978, and "good faith" is undefined in the Bankruptcy Code. *In re Welsh*, 711 F.3d at 1127. In the Sixth Circuit, "good faith" has been defined as a subjective analysis of the

3

totality of the circumstances including, but not limited to, a twelve factor test stated *In re Okoreeh-Baah*, 836 F.2d 1030, 1032 (6th Cir. 1988) and in other cases. As such, the good faith requirement is an amorphous, flexible, and nearly boundless requirement, meant to be tailored and responsive to a myriad of circumstances, even such not specifically provided for in the Bankruptcy Code. A debtor's refusal to include his or her Social Security income as part of their "disposable income" however, cannot be categorized or described as general. On the contrary, it is unmistakably statutorily specific that a debtor is required to commit all of his or her "disposable income" to the Chapter 13 plan, *and* that "disposable income" is defined to specifically exclude Social Security income. Section 1325(a), which contains the good faith requirement, begins with the phrase "except as provided in subsection (b)", thereby explicitly referring and giving precedence to subsection (b), which, as noted, clearly states that Social Security income is not part of a debtor's disposable income. In that sense, "[w]hen Congress speaks directly to one of the good faith factors, the judicial good faith inquiry is narrowed accordingly." *In re Welsh*, 711 F.3d at 1131. To adopt the Trustee's position would be to render this specific statutory exclusion meaningless, and to invalidate the benefits of this exclusion under the guise of the "good faith" requirement. This Court agrees with the following articulation in *Welsh*:

> We cannot conclude, however, that a plan prepared completely in accordance with the very detailed calculations that Congress set forth is not proposed in good faith. To hold otherwise would be to allow the bankruptcy court to substitute its judgment of how much and what kind of income should be dedicated to the payment of unsecured creditors for the judgment of Congress. Such an approach would not only flout the express language of Congress, but also one of Congress's purposes in enacting the BAPCPA, namely to "reduce[ ] the amount of discretion that bankruptcy courts previously had over the calculation of an above-median debtor's income and expenses." *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652, 658 (8th Cir.2008).

*Id.*

4

13-54435-mlo    Doc 86    Filed 05/06/15    Entered 05/07/15 06:46:19    Page 4 of 10

As an independent basis for this decision, there is the specific language of a provision of the Social Security Act, which provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, *or to the operation of any bankruptcy or insolvency law.*

42 U.S.C. § 407(a) (emphasis added). Absent any provision in the Bankruptcy Code on the subject of inclusion of Social Security income, that provision alone can be seen as dictating the result the Debtors seek here. To mandate that a debtor commit (or that there be taken into account for purposes of the good faith determination) future Social Security payments would be to necessarily subject such payments "to the operation of any bankruptcy… law" by any definition of the term "operation." No one argues that a Chapter 13 debtor cannot *voluntarily* utilize his or her Social Security income to pay creditors through a confirmed plan or even outside bankruptcy. That differs from where a bankruptcy court *mandates* that such income be so utilized, lest confirmation be denied in the first place. This reasoning is reinforced when considered in the context of cases that have decided (based on this same provision of the Social Security Act) that such payments are not part of the bankruptcy estate. Instructive in that regard is an Eighth Circuit's decision:

> We therefore hold, in accord with the BAP's decision, that § 407 operates as a complete bar to the forced inclusion of past and future social security proceeds in the bankruptcy estate. *See Carpenter II*, 408 B.R. at 246–49; see also *In re Buren*, 725 F.2d at 1086 (noting "social security payments only become part of a debtor's estate if he chooses to include them"). We conclude § 407 must be read as an exclusion provision, which automatically and completely excludes social security proceeds from the bankruptcy estate, and not as an exemption provision which must be claimed by the debtor.

*In re Carpenter*, 614 F.3d 930, 936 (8th Cir. 2010) (quoting *In re Buren*, 725 F.2d 1080, 1086 (6th Cir. 1984)).

The Trustee cites *Mains v. Foley* 2012 WL 612006 (W.D. Mich. 2012), which concluded that arguments pertaining to § 407 of the Social Security Act are unpersuasive, reasoning that this provision focuses on a third party's *compelled* acquisition through legal process of Social Security benefits, whereas the situation at hand deals with a debtor who *voluntarily* seeks the benefits of a Chapter 13 bankruptcy and should accordingly demonstrate good faith. In doing so, that Court reasoned:

> No one would suggest that such a beneficiary has immunity from paying the restaurant bill he or she incurred just because the cash to pay came from Social Security benefits. By the same token, nothing in section 407 of the Social Security Act gives a debtor immunity from demonstrating good faith as a pre-condition to confirmation of a Chapter 13 plan, even if in a particular case—like this one—demonstrating good faith requires including some or all of the Social Security benefits in the plan.

*Id.* at *5. This Court respectfully disagrees with the *Mains* Court for several reasons. First, as previously discussed, the specific provisions of the Bankruptcy Code that allow a debtor to exclude Social Security income from the plan take precedence over the more general good faith requirement. Second, as indicated in *In re Buren*, 725 F.2d at 1086, a debtor is certainly allowed to *voluntarily* commit his or her Social Security income. To deny confirmation of that debtor's proposed plan only because he or she does not so volunteer that income would be to, in effect, make committing that income a *mandatory* confirmation requirement. Third, the Court believes the *Mains* Court's restaurant bill analogy is misplaced. It is true that a person's liability on a restaurant bill does not depend on whether or not his or her income is sourced from or traceable to Social Security. However, if the restaurant were to obtain a judgment against the debtor for an unpaid bill, its ability to collect on that judgment from the debtor's Social Security income would

undoubtedly be impeded by § 407 ("…none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process…").

Nor is the Court persuaded by the other Courts taking the minority approach. First, *In re Mains* 451 B.R. 428 (Bankr. W.D. Mich. 2011) (aff'd sub nom. *Mains v. Foley* 2012 WL 612006 (W.D. Mich. 2012)) opined that the multi-factored good faith test has always contained several "ability to pay" factors, including "the amount of income of the debtor and the debtor's spouse from all sources[.]" 451 B.R. at 432-33. For this and other reasons, that Court predicted that if the Sixth Circuit were presented with this legal issue, it would find that a court can deny confirmation on the grounds that the debtors did not include Social Security income in their plan. However, since *Mains* was decided, multiple other Courts of Appeal have taken the opposite approach. Other Courts in the minority view have also reasoned that as part of the 2005 BAPCPA amendments, Congress excluded Social Security benefits from the "disposable income" definition, while not amending the subjective "good faith" requirement, the inference there being that Congress did not intend to remove the Social Security income issue from the good faith analysis. *E.g. In re Upton,* 363 B.R. 528 (S.D. Ohio 2007); *Mains v. Foley* 2012 WL 612006 (W.D. Mich. 2012). This Court cannot help but comment that for Congress to alter the definition of "good faith" would be a practical impossibility because Congress has never defined it in the first place. Further, very little can be surmised from the fact that Congress failed to eliminate an item from the nearly infinite bounds of the "good faith" definition, particularly where that item is specifically dealt with elsewhere. Social Security income is dealt with specifically in § 1325(b) and is excluded from the definition of "disposable income." Accordingly, Congress thus effectively narrowed the scope of the good faith inquiry.

The Trustee further relies on *In re Wise*, 13-44673, dkt. no. 30 (Bankr. E.D. Mich. June 19, 2013), a bench opinion of Judge Rhodes in which he denied confirmation of the Debtor's plan because it committed some, but not all, of her Social Security income. That debtor took substantially the same position as the Debtors in this case. That Court opined that Congress, in enacting the good faith requirement, must have meant something more than mere compliance with the strict elements of § 1325(b), otherwise, good faith would be made redundant. In effect, that ruling required the debtor to not only prove that her proposed use of Social Security income was in compliance with § 1325(b) (which it indisputably was), but to further prove that the lawful exclusion of Social Security income from the plan was in good faith. This Court respectfully disagrees for the reasons already stated and because such a ruling essentially allows the good faith requirement, which is the more general provision, to swallow up and render extraneous the more specific § 1325(b) exclusion.

This Court is not without appreciation for the position of the Trustee and creditors. In this case, the Debtors' Social Security income will over the life of the plan amount to some $180,000 and, if it were used to fund the plan, could have paid a 100% dividend to unsecured creditors. Indeed, this ruling might lead to certain situations where high income debtors are able to keep substantial sums of Social Security income and pay a smaller dividend to creditors. However, whatever might be seen as an unfair result in certain cases, the Court's discretion is limited by its view of the plain meaning of the statutes. Creditors and trustees are not wholly without recourse. For one, this ruling is only that confirmation cannot be denied on good faith grounds solely for failure to include Social Security *income*. Theoretically, if a debtor for example proposed using the retained Social Security income to purchase luxury goods or to maintain an excessive standard of living, an argument can be made that confirmation of such a plan should be denied

on good faith grounds, not because Social Security income was excluded from disposable income, but because of those other circumstances of the case. In that sense, it is still possible for a debtor to pass the objective test of § 1325(b) but fail the subjective test of § 1325(a), but that failure cannot be simply due to failure to include Social Security income as part of the debtor's disposable income. Additionally, the feasibility requirement of § 1325(a)(6) will continue to be relevant to plan confirmation. *Mort Ranta*, 721 F.3d at 254 ("Thus, in evaluating whether a debtor will be able to make all payments under the plan and comply with the plan, the bankruptcy court must take into account any Social Security income the debtor proposes to rely upon, and may not limit its feasibility analysis by considering only the debtor's 'disposable income.'").

This Opinion should not be interpreted as eviscerating the good faith requirement and its relevance in this or other situations. It only concerns the exclusion of Social Security income from a debtor's disposable income pursuant to § 1325(b), and does not touch on other "ability to pay" issues that are, or may be, involved in confirmation.

Therefore, the Chapter 13 Trustee's objection to confirmation is overruled and the Debtors shall present an appropriate order.

**Signed on May 06, 2015**

9

13-54435-mlo    Doc 86    Filed 05/06/15    Entered 05/07/15 06:46:19    Page 9 of 10

/s/ Walter Shapero
Walter Shapero
United States Bankruptcy Judge